# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**STACEY HAMLETT,**

      **Plaintiff,**

**v.**                                                                         **Civil Action No. 1:08cv116**
                                                                            **(Judge Keeley)**

**LES E. NICHOLSON, WAYNE PHILLIPS,**
**J. G. ESPARZA, LEWIS BRESCOACH**
**AND MARTA BLANCO,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

The *pro se* plaintiff, initiated this civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), on May 22, 2008. In the complaint, the plaintiff asserts that the defendants, federal employees, were deliberately indifferent to his serious medical needs. On May 28, 2008, the plaintiff was granted permission to proceed as a pauper and was directed to pay an initial partial filing fee. The plaintiff paid his initial partial fee on June 16, 2008. Accordingly, this case is before the undersigned for a report and recommendation pursuant to LR PL P 83.01, <u>et</u> <u>seq.</u>, and 28 U.S.C.§§ 1915(e) and 1915A.

### I. The Complaint[1]

According to the complaint, on June 12, 2007, the plaintiff attended medical sick call complaining of persistent pain in the upper right area of his mouth. In addition, the plaintiff also complained of a headache and general pain in his face. The plaintiff was diagnosed as having tooth

---

[1] For purposes of this Order, the undersigned will assume all facts as stated in the complaint as true.

decay and tooth #3 was listed as having a loose filling. The plaintiff was prescribed Motrin 800mg and told to return to sick call if his symptoms persisted.

On August 8, 2007, the plaintiff was taken to see an outside dentist, Dr. Nicholson, to have tooth #3 extracted. Dr. Nicholson x-rayed the plaintiff's mouth and then extracted his tooth. Once extracted, Dr. Nicholson realized that the root tips were still attached to the plaintiff's mouth and could not be extracted due to their close proximity to the plaintiff's sinus cavity. Nonetheless, the plaintiff was stitched up and returned to FCI-Morgantown. The plaintiff was given care instructions for his mouth, Tylenol #3 for pain, and antibiotics.

On August 13, 2007, the plaintiff returned to medical sick call complaining of throbbing headache, toothache and trouble sleeping from the pain in his mouth. The plaintiff was seen by physician's assistant, Marta Blanco. Defendant Blanco prescribed the plaintiff Percocet for pain and gave him a three-day work idle. Defendant Blanco advised the plaintiff to return to sick call if his symptoms did not improve. After this appointment, the plaintiff made an administrative request for oral surgery to have the root tips removed.

On August 15, 2007, the plaintiff returned to sick call because of his deteriorating condition. By now, the plaintiff was suffering severe pain from a throbbing headache and toothache. The plaintiff requested additional antibiotics. Plaintiff was again seen by defendant Blanco who prescribed antibiotics and pain medication. Defendant Blanco also advised the plaintiff to gargle with salt water, as needed, and provided him another medical work idle.

On August 16, 2007, the plaintiff's administrative request for oral surgery was denied by defendant Lewis Brescoach, the Health Services Administrator.

On August 17, 2007, the plaintiff reported to medical sick call complaining of severe

toothache, earache and soreness on the right side of his jaw. Realizing that there was bleeding in plaintiffs' mouth, medical staff prescribed more Percocet.

On September 14, 2007, the plaintiff reported to sick call complaining of extreme chills, diarrhea and vomiting. "The defendants" were notified and "they" instructed Morgantown staff to admit the plaintiff to an outside hospital. The plaintiff was admitted to Ruby Memorial Hospital with a temperature of 101.2 degrees. The plaintiff was placed on intravenous antibiotics and prescribed Clindomycin and Noprosyn. The plaintiff was returned to FCI-Morgantown on September 15, 2007, with instructions to follow-up with the dental clinic on Monday, September 17, 2007. The plaintiff received another medical work idle.

On October 3, 2007, the plaintiff was granted a furlough and taken to an outside institution for oral surgery to have the root tips removed. After the procedure, the plaintiff was returned to FCI-Morgantown and prescribed Amoxicillin and Tylenol #3 and given another medical work idle.

On October 10, 2007, the plaintiff attended medical sick call complaining of excruciating pain in his sinus area and breathing problems. The plaintiff also had severe swelling of his gums and could not eat. The plaintiff was seen by defendant Blanco who prescribed him antibiotics and referred the plaintiff for a follow-up appointment at a later date.

Based on this factual history, the plaintiff asserts that as a result of Dr. Nicholson's neglect and mistakes, and the other defendants' refusal to provide the necessary procedures to fix those mistakes, he now suffers from severe sinus problems. In addition, the plaintiff also asserts that blowing his nose causes him pain, that he has several holes in his mouth and that a very bad odor emanates from the location of the sinus cavity. As relief, the plaintiff seeks a declaratory judgment and compensatory and punitive damages.

3

## II. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[2] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III. Analysis

### A. Defendants Phillips and Esparza

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Therefore, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d

---

[2] Id. at 327.

4

Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

Nonetheless, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. Id. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

In this case, the plaintiff does not allege any personal involvement on the part of Wayne Phillips or J. G. Esparza. Instead, it appears that the plaintiff has named defendants Phillips and Esparza merely in their official capacities as the Warden and Associate Warden of FCI-Morgantown,

respectively. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). On the other hand, remedy under Bivens is against federal officials in their individual capacities, not the federal government. Moreover, the plaintiff has not provided any evidence that defendants Phillips or Esparza tacitly authorized or were indifferent to an alleged violation of his constitutional rights. Accordingly, the plaintiff cannot maintain a Bivens claim against Warden Phillips and Associate Warden Esparza, and those defendants must be dismissed from this action.[3]

**B. Defendants Nicholson, Brescoach and Blanco**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a

---

[3] To the extent the plaintiff is asserting that defendants Phillips or Esparza were deliberately indifferent to his serious medical needs by denying his administrative requests, that claim is without merit. This is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

lifelong handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

Here, the plaintiff's own complaint refutes his claim of deliberate indifference. At every

instance in which the plaintiff sought medical treatment, he was evaluated, treated and advised on follow-up care and appointments. More specifically, the plaintiff's complaint, and attached medical records, show that he was promptly seen by medical staff when attention was sought, he was prescribed pain relief and antibiotics, he was twice taken to an outside doctor for care, and when his condition worsened, he was immediately admitted to an outside hospital. The plaintiff's complaint evinces absolutely no delay in care, or failure to provide care. At best, the plaintiff alleges that defendant Brescoach denied his August 13, 2007, request for oral surgery, and that Dr. Nicholson was negligent for failing to properly review the plaintiff's x-rays. However, the plaintiff's medical records show that his request for oral surgery was denied by a review committee, not solely by defendant Brescoach. Complaint at Ex. 7. Moreover, claims of medical negligence do not rise to the level of a constitutional violation. See Estelle v. Gamble, 429 U.S. at 106 (a finding of deliberate indifference requires more than a showing of negligence). Accordingly, the plaintiff fails to state a claim for which relief can be granted against defendants Nicholson, Brescoach and Blanco, and those defendants should be dismissed from this action.

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the plaintiff's complaint be **DISMISSED as frivolous** pursuant to 28 U.S.C.§§ 1915(e) and 1915A, for the failure to state a claim upon which relief can be granted.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file

8

objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: June 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE